C. H. WOOD, Administrator of the Estate of CELISTA H. WOOD, deceased, C. H. WOOD, EVA B. ANDERSON, AND ELLA S. SHEALY, Appellants, *v.* LOTTIE A. WOOD, Executrix of the Estate of B. H. WOOD, deceased, LOTTIE A. WOOD, MARY H. EBY AND C. B. FITCH.

**Divorce:** WHEN JUDGMENT MAY BE ASSAILED. A judgment of divorce 1 may be assailed for fraud the same as any other decree, even after the death of one or both of the parties; not however for the purpose of continuing the controversy touching the right of divorce itself, but as affecting the property right of parties to the suit, heirs and personal representatives.

**Same:** WHO MAY PROSECUTE ACTION. Either the personal represen- 2 tative or the heirs may prosecute an application for the vacation or modification of a judgment of divorce against one since deceased, or for a new trial, where such a decree affects the interests of the parties.

**Insanity:** REMOVAL OF DISABILITY: LIMITATION OF ACTIONS. The dis- 3 ability of an insane person is terminated by death, and a proceeding to vacate a judgment fraudulently obtained against such person must be commenced within one year thereafter.

**Judgments:** FRAUD UPON THE COURT: VACATION. While a decree 4 will not be set aside on the sole ground that the issue directly involved has previously been decided on perjured testimony, yet where a marriage was annuled on the false allegation and proof that defendant was insane at the time of the marriage, which issue had been previously adjudicated against the plaintiff by the same court and the fact of such adjudication fraudulently concealed, a fraud was perpetrated upon the court justifying a vacation of the decree.

**Same:** EFFECT OF DECREE. The status of a party while living cannot be affected by a decree entered after his death, it can only affect the property rights of others.

*Appeal from Linn District Court.*— HON. J. H. PRESTON, Judge.

THURSDAY, OCTOBER 24, 1907.

A demurrer to the petition was sustained, and, as plaintiffs elected to stand on the ruling, the petition was dismissed and they appeal.— *Reversed.*

*Francis & Owen,* for appellants.

*Deacon & Good* and *Prouty & Prouty,* for appellees.

LADD, J.— The petition alleged that B. H. Wood was married to Celista H. Wood, April 22, 1854, and there were born to them three children, C. H. Wood, Eva B. Anderson, and Etta S. Shealy, plaintiffs herein; that Celista H. Wood was insane and confined in one of the state hospitals for the insane and the county asylum of Linn county from 1884 until her death in 1904; that B. H. Wood began suit to annul his marriage with her in the district court of Linn county in 1886, caused notice to be served on her as provided by statute, defense being made by a guardian *ad litem*, and that on hearing, a decree was entered April 24, 1886, dismissing his petition; that on August 10, 1886, said Wood, through a different attorney, filed a second petition praying for like relief, caused notice to be served as before, and a guardian *ad litem* to be named, who filed answer, but did not plead a former adjudication; that evidence was introduced and a decree entered November 3, 1886, annuling said marriage; that the proceedings in the two suits were identical, save the decrees; that neither decree was appealed from; that thereafter, though in the same month, B. H. Wood was married to the defendant Lottie A. Wood, who survives him;

that said Wood died in 1903; that subsequent to the first marriage he had acquired title to several lots in Cedar Rapids now claimed by Lottie M. Wood and to two tracts of land claimed by the defendants Eby and Finch, respectively, in the conveyance of which the said Celista did not join. Plaintiffs, who are the administrator of the estate of and heirs of Celista H. Wood, in addition to the foregoing, aver that said Celista was not insane at the time of her marriage to B. H. Wood, and did not become so until 1879, which fact B. H. Wood well knew; that he was guilty of fraud in bringing the second suit, and concealed from the court the fact that on identical issues the relief sought had been denied and adjudicated against him; that the proceedings were erroneous as against an insane person, and, owing to the unavoidable casualty and misfortune of her condition, she was unable to make defense; that this action was begun within one year after her death; that the first decree referred to was not defeated by the second decree entered, and plaintiffs pray that the decree annuling the marriage be set aside, and held for naught.   A general demurrer was sustained.

I.   The proceeding purports to have been begun under the provisions of section 4091 of the Code, authorizing the district court, after the term at which rendered, to vacate or modify a judgment or grant a new trial; (1) for fraud practiced in obtaining the same; (2) for erroneous proceedings against a minor or person of unsound mind, when such errors or condition of mind do not appear in the record; (3) for unavoidable casualty or misfortune preventing the party from prosecuting or defending.   It is apparent from a reading of the petition that plaintiffs were not entitled to relief on either of the last two grounds.   No error is complained of, save such as appeared in the record, and the condition of the mind of the defendant in the divorce suit was disclosed by the record.   Even if it were conceded that the casualty or misfortune mentioned in the statute contemplates unsoundness of mind, yet this did not prevent a defense by

guardian *ad litem* such as is provided for persons laboring under disability.

II.   The only basis for the action, then, is the fraud alleged to have been practiced in obtaining the decree.   The parties thereto are both dead, and their *status* while living

1. DIVORCE: when judgment may be assailed.

is no longer a proper subject of judicial inquiry, save as it may affect the property rights of their heirs or survivors.   On this ground, an action by the unsuccessful party to annul a decree of divorce was sustained in *Lawrence v. Nelson,* 113 Iowa, 277, while in *Barney v. Barney,* 14 Iowa, 189, where no property interests were involved, the court held that the action owing to its nature abated even after the entry of decree in the district court, so that an appeal could not be prosecuted by the survivor.   Where property interests are directly affected, the rule quite generally prevails that the decree in a divorce suit may be assailed by appeal or otherwise the same as any other judgment.   Thus in *Nickerson v. Nickerson,* 34 Or., 1 (48 Pac., 423, 54 Pac., 277), after recognizing the rule as announced in *Barney v. Barney, supra,* the court declared that, where the consequences of the divorce are such as affect the property rights of the parties to the suit, the heirs and personal representatives may have such an interest as that the cause may survive, not for the purpose of continuing the controversy touching the right of a divorce within itself, but for the ascertainment of whether the property has been rightly diverted from its appropriate channel of devolution, and to this end the court held that the heirs of deceased might prosecute the appeal to determine whether the divorce was rightly granted, in order that conflicting property rights as between them and the other party to the suit might be determined.   See also, *Thomas v. Thomas,* 57 Md., 504; *Downer v. Howard,* 44 Wis., 82.   *Danford v. Danford,* 111 Ill., 236, and decisions cited in the case first cited.   For like reasons, courts will annul or vacate decrees of divorce on sufficient showing after the death of one or both of the

parties thereto. *Lawrence v. Nelson, supra,* and valuable note thereto in 57 L. R. A., 583. *Contra,* see *Dwyer v. Nolan,* 40 Wash., 459 (82 Pac., 746, 1 L. R. A. (N. S.), 351, 111 Am. St. Rep., 919).

III. Thus far there is not serious controversy, and but two questions remain: (1) Can an administrator or the heirs of a party prosecute the application for the vacation or

2. SAME:
 who may
 prosecute
 action.

modification of a judgment or for new trial under section 4091 of the Code? And (2), if so, are the allegations of the petition sufficient to justify such relief? Ordinarily strangers to the record, unless authorized by statute, have no standing on which to base an application to vacate a judgment. *Tyler v. Aspinwall,* 73 Conn., 493 (47 Atl. 755, 54 L. R. A. 758). The petition under 4091 does not constitute a statement of a new cause of action, but merely an application for the opportunity of retrying the issues as presented in the original suit. For the purposes of such petition, and these only, the cause is treated as still pending. Section 3443 of the Code declares that " all causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." Section 3445 provides that any such action " may be brought, or the court, on motion, may allow the action to be continued by or against the legal representative or successors in interest of the deceased." These statutes should be liberally construed, so as to permit the substitution of the representative or successors of the deceased litigant in his place at any time before the cause is finally disposed of. The procedure is somewhat akin to that by bill of review in equity, which might be filed by any one showing that he had an interest which was injuriously affected by the decree, and the manifest object of the last section quoted is to render available to the legal representative or successors in interest all the remedies to which the litigant, had he lived, might have resorted.

IV. The petition for new trial, however, must be filed

within a year after the removal of the disability.  Section 4094, Code; *Pollock v. Milburn,* 112 Iowa, 529.  The dis-

**3. INSANITY: removal of disability: limitation of actions.**

ability of the defendant in the former action was terminated by death.  This must be so, else she will continue insane forever, a condition inconsistent with dissolution.  See *Mc-Neil v. Sigler,* 95 Iowa, 587.  In *Gibbs v. Sawyer,* 48 Iowa, 443, the court in deciding that death removed the disability of infancy, said: "Surely such would be the proper construction in case of the death of a married woman or a lunatic.  In such case, if death does not remove the disability, it would continue forever, for no one could determine when the lunatic would have recovered his reason or the married woman her rights as *feme sole.*"  What is meant by the statute is such a change that an action may be prosecuted when the reason has been restored or upon his death, when suit may be prosecuted against his representatives or successors.

V.  The only allegations of fraud contained in the petition are that the deceased husband, though he knew his wife Celista was sane when they were married, falsely asserted that

**4. JUDGMENTS: fraud upon the court: vacation.**

she was insane, and procured the marriage to be annulled on that ground; also, that he concealed from the court the fact that such issue had been adjudicated against him in a like action but a few months previous.  It is true as contended, that a decree will not be set aside on the sole ground that an issue directly raised by the pleadings has been decided on perjured testimony.  *Graves v. Graves,* 132 Iowa, 199.  "But," as said in that case, "if accompanied by any fraud extrinsic or collateral to the matter involved in the original case sufficient to justify the conclusion that but for such fraud the result would have been different, a new trial may be granted."  In a like action in which the issues and evidence were identical, as is alleged, the plaintiff therein had been denied relief but a few months prior to the entry in the last case, granting the very relief then denied; i. e., annul-

ment of the marriage. To accomplish this, he had employed a different attorney, and a guardian *ad litem* not connected with the former proceeding had been appointed. The defendant therein was in the insane asylum as she had been at the time of the first trial. Mere absence of the opposing party is given much weight by some courts *(Laithe v. McDonald,* 7 Kan. 254; *Id.,* 12 Kan., 340), and especially where the false testimony is given by the prevailing party alone *(Jordan v. Volkenning,* 72 N. Y., 300). In *Peagram v. King,* 9 N. C., 295 (11 Am. Dec., 793), the fact that the defrauding party had confessed that the action had been maintained by perjured testimony was regarded as controlling. In the case at bar, not only were the allegations of the petition and evidence supporting it false, but they had been adjudicated to be false by the very court by which the decree was entered; the facts being concealed from its knowledge. Had the defendant been a person of sound mind to whom he owed no duty, no obligation of disclosing defensive matter would have rested on the plaintiff. *Cooley v. Brayton,* 16 Iowa, 18. But she was his wife, helpless and confined in the asylum for the insane, and for him to prosecute the second action under the circumstances disclosed was such a fraud upon the court as will justify setting aside the decree.

In *Borden v. Fitch,* 15 Johns (N. Y.) 121 (8 Am. Dec., 225) the wife had separated from her husband by virtue of an act of Legislature of Connecticut, equivalent to a divorce, *a menso et thoro,* to continue at her pleasure. While this was in force and with knowledge of its existence, the husband, as he had appeared in the matter before the Legislature, procured a divorce in Vermont on the ground of desertion, without disclosing the act of the Legislature, his wife still living in Connecticut, and the divorce was held to be fraudulent, though the decision was also based on another ground. In *Vischer v. Vischer,* 12 Barb. (N. Y.) 640, suppressing the fact that a decree *a menso et thoro* had been rendered in New York from the court in an application for a divorce on

the ground of desertion, which was not true, was held to be such fraud as to invalidate the decree of divorce granted in the State of Michigan. But in *Harrison v. Harrison,* 19 Ala., 499, in a collateral attack on a decree of divorce entered in that state on the ground of abandonment, a decree from bed and board previously rendered in South Carolina was held not to render it void for fraud, because such defense was not disclosed in the bill. After a divorce in Scotland, and a second marriage, the second wife brought in her nullity suit on the ground that at the time of the second marriage the defendant had another wife living. Dr. Ludington, speaking of the disclosure with reference to the divorce, said: " If a fact of such magnitude had been suppressed, I am of opinion that any sentence pronounced by the court would have very little availed the parties; that it would not have been finally binding, but would have been open to re-examination; that such suppression would, in short, have rendered all the proceedings liable to impeachment. An endeavor to obtain a sentence when any such material matter was withheld would be unfair toward the court, and prejudicial to the due administration of justice." *Conway v. Beasley,* 3 Hag. Ecl. Rep., 638. It is to be observed that *Graves v. Graves, supra,* was an action in equity, and was not instituted within the time exacted by section 4091 of the Code. See *Larson v. Williams,* 100 Iowa, 110. While grounds for new trial specified in that section are exclusive, relief if granted after the time fixed therein, is by virtue of the equitable powers of the court, and not owing to statutory authority. Such an action is to be distinguished from an application for new trial in the original suit. *Hintrager v. Sumbargo,* 54 Iowa, 604. The latter is in the nature of an application to correct the the record, and to prevent wrong and injustice from the effect of the decree as it now stands. *Edson v. Edson,* 108 Mass., 590 (11 Am. Rep., 393). We are of opinion that the fraud alleged was such, if proven, that a new trial should be awarded.

VI. It follows from what we have said that this is not a collateral attack on the decree; nor is the point that the vacation of the decree was matter of personal privilege only.

5. SAME: effect of decree. Celista Wood was insane when the decree was entered, and so continued until her death. Her *status* while living cannot be affected by any order or decree which may be entered, and the only effect these can have will be on the property rights of others. The reason for denying the guardian of an insane person the authority to prosecute divorce proceedings has no application. See *Mohler v. Shank,* 93 Iowa, 279. It is suggested that the petition in the first cause must have been dismissed because of want of proof as to residence. This, however, is rebutted by the allegation that the issues in the actions " were identical, and the evidence upon which said proceedings were maintained was identical, and said former decree constituted an adjudication against the right of said B. H. Wood to have said marriage relation annulled on account of insanity existing at the time of marriage." This was tantamount to saying that the former adjudication was on the merits. Whether the same judge heard both suits does not appear from the record; and, even if so, this would be no more than an evidentiary circumstance bearing on the issue of concealment. The question of laches is not involved, as application for new trial was made within the statutory period.

We have touched upon every point argued. The petition alleges that the deceased husband owned certain real estate in his lifetime which defendants claim. It contains no allegation that he ever parted with title thereto, and, for this reason, we have no occasion to determine whether a purchaser for value without notice of the infirmity of the decree and relying upon its validity will be protected. See, however, *Colvin v. Colvin,* 2 Paige (N. Y.), 385 (22 Am. Dec., 644); *Whitcomb v. Whitcomb,* 46 Iowa, 437.— *Reversed.*